**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TREMONT LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC., *et al.*, | § | CIVIL ACTION NO. H-08-1063 |
| | § | |
| Defendants, | § | |
| | § | |
| VS. | § | |
| | § | |
| NL INDUSTRIES, INC., | § | |
| | § | |
| Third-Party Defendant. | § | |

**MEMORANDUM AND ORDER**

Halliburton—Halliburton Energy Services, Inc. ("HESI") and DII Industries, LLC ("DII")—challenges a confidentiality designation made by Tremont LLC ("Tremont") and NL Industries, Inc. ("NL"). (Docket Entry No. 48). Based on the motion, the response, the reply, the present record, and the applicable law, this court denies Halliburton's motion challenging the confidentiality designation. The reasons are set out in detail below.

**I.    Background**

Tremont seeks to "recover from Halliburton costs and expenses that Tremont has incurred and will incur to defend, indemnify, investigate and respond to a number of environmental sites and claims that derive from the former petroleum services business of NL . . . ." (Docket Entry No. 1 at 2). "These sites and claims include, but are not limited to, the Gulf Nuclear Sites: Odessa, Ector County, Texas; Webster, Harris County, Texas; and (Tavenor) Houston, Harris County, Texas; the Malone Service Company located in Galveston County, Texas; the Spinks Site located in Laurel,

Mississippi; the Potosi and Fountain Farm Sites located in Washington County, Missouri[;] the ArChem-Thames Chelsea Superfund Site located in Houston, Texas[;] and the Olen Lee family toxic tort case located in Calcasieu Parish, Louisiana (collectively, the 'Sites')." (*Id.*). "Tremont also seeks a declaratory judgment that Halliburton is contractually liable to Tremont to indemnify and hold Tremont harmless against all costs and expenses arising out of or otherwise attributable to NL's former petroleum services business, including, but not limited to, the Sites, except those specifically retained in [a certain] 1990 Plan of Restructuring." (*Id.*). Halliburton has filed a third-party complaint against NL.[1] (Docket Entry No. 13).

In a related case in this court, *Halliburton Energy Services, Inc. et al. v. NL Industries, et al.*, Civil Action No. H-05-4160 (the "2005 Case"), Halliburton and TRE Holding Corporation, TRE Management Company, NL, and Tremont (collectively, the "Tremont Parties") arbitrated the allocation of responsibility between them for past and future costs of investigating and remediating environmental contamination at a site near Magnet Cove and Malvern, Arkansas. The panel concluded that Halliburton, rather than the Tremont Parties, was responsible. The arbitration took place in two phases and resulted in two separate awards. This court confirmed both awards in the 2005 Case in a March 31, 2008 order (the "Confirmation Order"), and entered a partial final judgment on the Confirmation Order. Halliburton appealed the Confirmation Order and partial final judgment, and the Fifth Circuit affirmed. *See Halliburton Energy Servs., Inc. v. NL Indus. Inc.*, No. 08-20277, 2009 WL 33648, at *1 (5th Cir. Jan. 7, 2009) (unpublished) (per curiam). While the appeal was pending, Halliburton filed a motion in the 2005 Case requesting relief under Rule 60(b)

---

[1] NL has moved to dismiss the third-party complaint or, in the alternative, for summary judgment, (Docket Entry No. 19), and has also moved for partial summary judgment, (Docket Entry No. 56). These motions will be resolved independently of this order.

from the Confirmation Order and partial final judgment.  In its opinion affirming the partial final

judgment, the Fifth Circuit "express[ed] no view on the merits of the [Rule 60 motion]," ceded

jurisdiction, and gave this court "whatever jurisdiction it would have had, absent an appeal, to

consider post-judgment motions."  *Id.* (citations omitted).

In connection with its Rule 60 motion in the 2005 Case, Halliburton sought to submit Exhibit

19, a redacted selection of pages taken from an index of approximately 21,000 boxes of documents

(the "Tremont Index").  In the present case—the "2008 Case"—this court entered an order under

Federal Rule of Evidence 502 to apply to document production.  (Docket Entry No. 35).  The Rule

502 Order stated that "the Tremont Parties['[2]] production of the Tremont Index to Halliburton will

not constitute any waiver of any privilege of any kind and will not cause the Tremont Parties to be

required to produce the Tremont Index to any other person, including but not limited to, Georgia-

Pacific Corporation, Milwhite, Inc., or M-I, LLC."  (*Id.* at 2).

Tremont and Halliburton entered into a Confidentiality Agreement in the 2008 Case.

(Docket Entry No. 48, Ex. B).  The Confidentiality Agreement applies "to all Confidential

Information provided by Parties [Tremont and Halliburton], whether written, oral, contained in

documents or transcripts, or in any other form."  (*Id.*, Ex. B. at 1).  The Agreement defines

"Confidential Information" to include "all material designated as such by any party in this Litigation

[the 2008 Case]" and states that "Confidential Information obtained during discovery in this

Litigation [the 2008 Case] from any party may not be used or disseminated except as provided for

in this Agreement."  (*Id.*, Ex. B at 1).  The Confidentiality Agreement states that the parties must

cooperate with each other in good faith to resolve any disagreement over the designation of

---

[2] The Rule 502 Order defines the "Tremont Parties" as Tremont and NL.

3

information as "Confidential Information."  (*Id.*, Ex. B at 3).  If the parties are unable to resolve a dispute, "the objecting party may apply to the Court for relief from such designation, and in connection with such application, the designating party shall bear the burden of proof to establish the 'highly sensitive and confidential' status of the information."  (*Id.*, Ex. B at 3).

Tremont and NL have designated the Tremont Index as "Confidential Information" under the Confidentiality Agreement and produced it to Halliburton pursuant to the Rule 502 Order.  (*See* Docket Entry No. 48, Ex. A to Ex. D).  Halliburton sought permission from Tremont to file Exhibit 19 under seal in connection with its Rule 60 motion in the 2005 Case.  (*See id.*, Ex. C).  In a letter to Halliburton's counsel, Tremont's counsel objected to the use of Exhibit 19, argued that Halliburton had violated the Confidentiality Agreement by using the Tremont Index outside the 2008 Case, and requested that Halliburton retract its Rule 60 motion in the 2005 Case.  (*See id.*, Ex. D). Halliburton has now filed the instant motion under seal in the 2008 Case, seeking an order granting "relief from the designation of the Tremont Index, and the portion redacted as Exhibit 19, as 'Confidential Information,'" and asking that it be allowed to submit Exhibit 19 *in camera*.  (*Id.* at 6).  Halliburton states that counsel for Georgia-Pacific Corporation ("Georgia-Pacific") have agreed that Exhibit 19 can be filed *in camera* and that Georgia-Pacific will not seek to examine it.  (*Id.* at 2).  Halliburton also states that it anticipates receiving a similar agreement from counsel for Milwhite Inc.  (*Id.*).

## II.    The Parties' Arguments

Halliburton argues that Exhibit 19—indeed, the entire Tremont Index—does not contain "highly sensitive and confidential" information because Tremont and NL cannot show that disclosure will cause economic harm or reveal secretive information.  (*See* Docket Entry No. 48 at

4

4).  Halliburton asserts that to the extent the Tremont Index could be confidential, Tremont has

waived confidentiality by referring to the Tremont Index in unsealed court filings.  (*Id.* at 5–6

(footnote omitted)).

In response, Tremont and NL argue that Halliburton agreed in the Confidentiality

Agreement[3] that the Tremont Index[4] would be used only in the 2008 Case, and not in the 2005 Case,

and that Halliburton agreed that production of the Tremont Index would not operate as a waiver.

(Docket Entry No. 49 at 1–2).  Tremont and NL argue that "[i]t is now apparent that Halliburton's

aim was to use the [Tremont] Index to attempt to undo the July 2, 2008 Partial Final Judgment in

the 2005 Litigation."  (*Id.* at 3).  Tremont and NL also argue that Halliburton did not ask to exempt

the Tremont Index from the Confidentiality Agreement before filing the Rule 60 motion.  (*Id.*).

Tremont and NL state that they have no objection to this court reviewing Exhibit 19 *in camera*,

arguing that it actually helps their position by demonstrating that the key box identified in Exhibit

19 was taken by Halliburton and never produced in the arbitration.  (*Id.* at 3–4).  Tremont and NL

argue that Exhibit 19 is not relevant or material to Halliburton's Rule 60 motion and that the

Tremont Index is not relevant to this 2008 Case because the issues in this case should be resolved

by applying the doctrine of issue preclusion.  (*See id.* at 4–6).  Tremont and NL assert that this court

need not resolve whether Exhibit 19 should be maintained as confidential because Tremont has

---

[3] Tremont and NL state that they reached an agreement with Halliburton regarding the confidentiality of the Tremont Index.  (Docket Entry No. 49 at 1).  However, NL does not appear to be a signatory to the Confidentiality Agreement.

[4] Tremont describes the index as "an index of approximately 20,000 boxes of historical records maintained by NL" and refers to it as "the NL Index."  (*See* Docket Entry No. 49 at 1).  The "NL Index" described in Tremont's response appears to be the same "Tremont Index" referred to in Halliburton's motion and the Rule 502 Order.  For ease of reference, this court will refer to the disputed index as the "Tremont Index."

5

agreed that this court can review it *in camera*, and Halliburton has shown no need to publish it to anyone else. (*Id.* at 7). Tremont and NL state that they have not produced the Tremont Index to anyone, except under the protections of the Confidentiality Order, precluding any finding of waiver. (Docket Entry No. 49 at 9). Tremont and NL also emphasize that they are not claiming that the existence of the index is confidential, merely its contents. (*Id.*). Tremont and NL also argue that Halliburton agreed in the Rule 502 Order that producing the Tremont Index did not waive claims of confidentiality. (*See id.*).

Halliburton submitted Exhibit 19 under seal, "for this Court's review in conjunction with the Motion [challenging confidentiality], and ultimately for the Court's consideration with the [Rule 60 motion]." (Docket Entry No. 51 at 2; *id.*, Ex. A). Halliburton also filed a reply. (Docket Entry No. 55). Halliburton reiterates that Tremont and NL have not shown that the Tremont Index or Exhibit 19 are "highly sensitive and confidential." (*Id.* at 2–3). Halliburton points out that it has never claimed that its own index is confidential, but only that it is subject to the Rule 502 Order. (*Id.* at 2).

## III.  Analysis

Although the parties have not submitted the entire Tremont Index for review, this court has reviewed *in camera* the redacted version that was submitted as Exhibit 19. Despite Tremont and NL's contention that Halliburton violated the Confidentiality Agreement by attempting to use Exhibit 19 in the 2005 Case, it appears that Tremont and NL not only agree to this court reviewing Exhibit 19 *in camera* to determine whether it is properly designated as "Confidential Information," but also do not object on confidentiality grounds to this court reviewing Exhibit 19 *in camera* for purposes of the Rule 60 motion in the 2005 Case, provided that the document remains under seal.

6

Because the Tremont Parties agreed that this court can consider Exhibit 19 *in camera* and because Halliburton has not shown a need to use the Tremont Index or Exhibit 19 other than to support its Rule 60 motion, there is no need to dedesignate the Tremont Index at this time.

Halliburton sought to submit Exhibit 19 in connection with its Rule 60 motion to show that "the index to the 21,108 boxes in NL's possession contains the Tremont Parties' counsel's reading files, including those for the years 1990 and 1991," and that the index "includes a box with a description of documents related to Bill Evon that appears suspicious and should have been disclosed in the Arbitration." (Case No. 05-4160, Docket Entry No. 341 at 24).  In denying the Rule 60 motion, this court determined that Halliburton was not prevented from fully and fairly presenting its case at the arbitration and confirmation proceedings because it had the documents at issue in its own possession.  Considering Exhibit 19 does not affect the analysis or lead to a different result. Because the original reason that Halliburton sought to challenge the confidentiality of the Tremont Index and Exhibit 19—to submit Exhibit 19 in connection with its Rule 60 motion—is unopposed, because Halliburton has not shown any other need for otherwise disseminating Exhibit 19 or the Tremont Index publicly at this time, and because this court is limited in analyzing the confidentiality of the entire Tremont Index in that only the redacted portion that makes up Exhibit 19 has been submitted for *in camera* review, this court declines to dedesignate the Tremont Index or Exhibit 19 at this time.[5]

---

[5] Halliburton argues that Tremont and NL have waived any confidentiality by referring to the Tremont Index in public court filings, and asserts that the "existence of the Tremont Index is not entitled to protection." (Docket Entry No. 48 at 5–6).  Tremont and NL do not seek to protect the existence of the Tremont Index as confidential, but seek to protect the contents of the index. (Docket Entry No. 49 at 9).  Any confidentiality associated with the contents of the Tremont Index is not waived by merely mentioning the existence of the index in public documents.  There is no evidence that Tremont and NL have waived the confidentiality of the contents of the index by producing it to third parties without an agreement to maintain confidentiality.  Halliburton argues that "it appears as though this very information [in Exhibit 19] was

IV.     **Conclusion and Order**

Based on the present record, Halliburton's motion challenging the designation of the

Tremont Index as confidential, (Docket Entry No. 48), is denied.

SIGNED on March 31, 2009, at Houston, Texas.

_____
                        Lee H. Rosenthal
                 United States District Judge

---

previously made available to Halliburton, as the Tremont Index appears to be an exhibit to the July 9, 1997 letter." (Docket Entry No. 48 at 4–5). The referenced July 9, 1997 letter is addressed from the records manager at Dresser Industries, Inc. and Baroid Corporation to Michael Carr at NL. (*Id.*, Ex. E). Without seeing the original attachment, it is difficult to be certain whether the Tremont Index was attached as an exhibit to that letter. Because of the various restructurings and mergers, at different times, documents were transferred between Halliburton and the Tremont Parties and between their predecessors, and as a result, even if the Tremont Index was attached to the July 1997 letter, it is not clear that Halliburton's possession of it at some point would have waived any confidentiality protection more broadly.